IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Samuel McKenzie,** | : |
| | : |
| Plaintiff, | : Case No. 2:23-cv-02999 |
| | : |
| v. | : Judge Algenon L. Marbley |
| | : Magistrate Judge Elizabeth P. Deavers |
| | : |
| **City of Columbus,** | : |
| | : |
| Defendant. | : |

**OPINION & ORDER**

This matter comes before this Court on Defendant's Motion for Summary Judgment (ECF No. 22). The parties appeared before this Court for oral argument on August 22, 2025. For the reasons stated below, this Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion (ECF No. 22).

I. BACKGROUND

A. Factual Background

Plaintiff Samuel McKenzie works as a Refuse Container Assembler and Repairer ("RCAR") for the City of Columbus. (McKenzie Dep., ECF No. 19-1, 16:17–24; Wellman Aff., ECF No. 22-1, ¶¶ 3, 7). Mr. McKenzie is African American. (McKenzie Dep., ECF No. 19-1 at 9:5–6). A collective bargaining agreement between the City and American Federation of State, County, and Municipal Employees Local 1632 covers RCARs. (*Id.* at 17:7–16; Wellman Aff., ECF No. 22-1, Ex. A). Mr. McKenzie has held an RCAR position since October 2015. (McKenzie Dep., ECF No. 19-1 at 16:17–19). Since 2019, Mr. McKenzie has had five supervisors. (Wellman Aff., ECF No. 22-1, ¶ 3).

Loren Brosie supervised Mr. McKenzie from August 12, 2019 to September 4, 2020. (*Id*.). Mr. Brosie is white. (*Id*. ¶ 4). Mr. Brosie resigned after an Equal Employment Opportunity ("EEO") investigation revealed that he used a derogatory racial slur. (Wellman Dep., ECF No. 21-1, 16:16–17:21). Mr. McKenzie did not file the EEO complaint against Mr. Brosie. (McKenzie Dep., ECF No. 19-1 at 26:24–27:1). Mr. McKenzie gave an interview as part of the investigation. (*Id.* at 27:4–6). Prior to Mr. Brosie's resignation, Mr. Brosie's supervisor had initiated discipline against Mr. McKenzie for allegedly taking an unauthorized smoke break in an unauthorized area. (Wellman Aff., ECF No. 22-1, ¶ 8, Ex. C). Mr. McKenzie argued that Mr. Brosie had treated him differently than white employees and an arbitrator overturned the discipline. (*Id.*).

After Mr. Brosie's resignation, Patrick Gardiner took over as supervisor from December 2020 to March 2021, followed by Anthony Fannin from March 2021 to May 2022. (Wellman Aff., ECF No. 22-1, ¶ 3). Both are white. (*Id.* ¶ 4). Caleb Maynard replaced Mr. Fannin in May 2022. Mr. Maynard is white. (*Id.* ¶ 4). He served as supervisor until March 2023 when he was replaced by Virgirl Jenkins. (*Id.* ¶ 3). Mr. Jenkins is African American. (*Id*. ¶ 4).

When Mr. Maynard took over as supervisor, the RCARs included Mr. McKenzie, Curtiss Fleming, Aaron McDole, and David Ryan. (*See id.* ¶¶ 7, 10). Two months later, in July 2022, Bill Ramey, joined the team as an RCAR. (*Id.* ¶ 10). Mr. Maynard had worked with Mr. Ramey previously when Mr. Ramey was a Refuse Collection Vehicle Operator Automated (RCVOA). (Maynard Dep., ECF No. 20-1, 56:11–19). Mr. Ramey, Mr. McDole, and Mr. Ryan are white. (Wellman Aff., ECF No. 22-1, ¶ 7). Mr. Fleming is African American. (*Id.*).

Though Mr. Ramey had been an RCAR for less than one month, Mr. Maynard selected him as backup supervisor. (Maynard Dep., ECF No. 20-1 at 49:22–50:2). The backup supervisor "learns some of the supervisor roles such as building the routes [in] Rubicon or inputting that information for Rubicon to build the routes, to assist when a supervisor is scheduled off." (*Id.* at

2

49:14–18). Mr. Maynard testified that he asked all RCARs to reach out if they were interested in the position, but no one did. (*Id.* at 50:5–12). Mr. Maynard then selected Mr. Ramey for the position. (*Id.*). According to Mr. Maynard, he did so based on "skill sets and work productivity." (*Id*. at 53:11–17). Mr. Maynard testified that Mr. Ramey did his job more efficiently than the others "on most days." (*Id*. at 56:10).

According to Mr. McKenzie, however, Mr. Maynard did not ask him about the backup supervisor position. (McKenzie Dep., ECF No. 19-1 at 73:5–17). Further, Mr. Fleming told Mr. McKenzie that he was not asked either. (*Id.*). Mr. Ryan and Mr. McDole both told Mr. McKenzie that Mr. Maynard asked them directly to be backup supervisor. (*Id.*; McKenzie Dep. Ex. 5, ECF No. 19-1).

On August 4, 2022, Mr. McKenzie and Mr. Fleming met with EEO Officer Leslie Blevins to report that Mr. Maynard was discriminating against them. (McKenzie Dep. Ex. 5, ECF No. 19-1). Mr. McKenzie and Mr. Fleming asserted that Mr. Maynard overlooked them for the backup supervisor position, and otherwise treated them differently from white RCARs by ignoring them in the workplace, giving instruction through other employees, GPS tracking and following them on their routes, and harassing them about route management. (*Id.*).

Ms. Blevins and Human Resources Manager Lori Wellman investigated the complaint. (*Id.*). Ms. Blevins and Ms. Wellman conducted in-person interviews with Mr. McDole, Mr. Ramey, and Mr. Ryan on August 29, 2022, former backup supervisor Darnell Matlock on September 1, 2022, and Mr. Maynard on September 14, 2022. (*Id.*). In their respective interviews, Mr. Ryan and Mr. McDole both reported that Mr. Maynard asked them directly to be backup supervisor, but they turned him down. (Maynard Dep. Ex. B, ECF No. 20-1, PageID ## 187, 191; Wellman Dep., ECF No. 21-1 at 28:7–29:9, 31:5–15). The investigators found that there had not

3

been discrimination and that "[t]here was a reasonable explanation why Mr. McKenzie and Mr. Fleming were not asked to be backup supervisors." (McKenzie Dep. Ex. 5, ECF No. 19-1).

After the EEO interviews with the RCARs, but before his interview, Mr. Maynard initiated two disciplines against Mr. McKenzie. (Maynard Dep., ECF No. 20-1 at 57:5–24, Ex. C). On September 8, 2022, Mr. Maynard reported that Mr. McKenzie did not fuel his truck at the end of the day although his route in the Rubicon navigation system included a fuel stop. (*Id.* at Ex. C, PageID # 197). Mr. Maynard claimed that Mr. McKenzie then became "loud and disruptive to his supervisor." (*Id.*). On September 13, 2022, Mr. Maynard reported that Mr. McKenzie did not use the Rubicon system to navigate to his first stop and that Mr. McKenzie arrived late to the first stop. (*Id.* at Ex. C, PageID # 198). According to Mr. Maynard, Mr. McKenzie hung up on him when questioned. (*Id.*) As a result of the two reports, Mr. McKenzie received oral and written reprimands under the collective bargaining agreement's progressive discipline system. (McKenzie Dep., ECF No. 19-1 at 68:10–16).

No policy requires RCARs to fuel up before returning each day. (Maynard Dep., ECF No. 20-1 at 40:19–41:3). Rather, the policy requires RCARs to refuel if their truck's compressed natural gas tank falls below 1,000 pounds per square inch. (*Id.*). Similarly, no written policy requires RCARs to use the Rubicon system to navigate to their first stop, and an RCAR would have discretion to not follow the route if the Rubicon would navigate them onto the highway. (*Id.* at 43:12–17; Wellman Dep., ECF No. 21-1 at 30:21–24, 69:7–10). Mr. McKenzie testified that the Rubicon system would direct him to go on the highway when used for longer distances. (McKenzie Dep., ECF No. 19-1 at 52:1–13). RCARs are not allowed to drive their trucks on the highway when loaded. (*Id.*). For that reason, Mr. McKenzie regularly used his phone to navigate to the first stop and then used Rubicon for his route. (*Id.*). Mr. McKenzie also testified that on one occasion he witnessed Mr. Ryan driving back to the warehouse because he forgot his Rubicon

4

entirely. (*Id.* at 43:1–22). Mr. McKenzie asserts that Mr. Maynard did not discipline Mr. Ryan for that incident. (*Id.* at 45:11–22).

Under the progressive discipline system, the consequences for each subsequent violation increase based on the employee's disciplinary history. (*See id.* at 86:11–87:4; McKenzie Dep. Ex. 9, ECF No. 19-1, PageID ## 130–31). Mr. McKenzie received two disciplines after the September 2022 oral and written reprimands. In April 2023, Mr. McKenzie damaged a gate while driving a flat bed truck. (McKenzie Dep. Ex. 3, ECF No. 19-1, PageID ## 111–13). Mr. McKenzie received a one-day working suspension. (*Id.*). His discipline history contained the reprimands. (*Id.*). In January 2024, Mr. McKenzie did not show up to work because he mistakenly thought he had scheduled off. (McKenzie Dep., ECF No. 19-1 at 24:14–25:1). Mr. McKenzie received a three-day working suspension. (McKenzie Dep. Ex. 4, ECF No. 19-1, PageID ## 115–16). His discipline history contained the reprimands and the one-day working suspension. (*See id.*).

Under the collective bargaining agreement, RCARs are eligible for a merit raise every other year. (Wellman Dep., ECF No. 21-1 at 39:23–24). Merit raises are based on performance evaluations. (*Id.* at 42:5–8). In a performance evaluation, the supervisor rates various aspects of the RCAR's performance as "exceeds expectations," "fully competent," "development needed," or "unacceptable." (*Id.* at 41:18–22; Maynard Dep. Ex. A, ECF No. 20-1). To receive a merit raise, an RCAR must earn four "exceeds expectations" ratings in a merit-raise-eligible year. (Wellman Dep., ECF No. 21-1 at 42:5–10).

In December 2022, Mr. Maynard reviewed Mr. McKenzie's performance. (Maynard Dep. Ex. A, ECF No. 20-1). Mr. Maynard rated Mr. McKenzie as "fully competent" in every category. (*Id.*). Mr. McKenzie was eligible for a merit raise in 2022. (*See id.*; Wellman Dep., ECF No. 21-1 at 40:21–11). As a result of the performance ratings, Mr. McKenzie could not receive a merit raise.

5

Mr. McKenzie had other evaluations before and after the one Mr. Maynard conducted. In March 2021, Mr. Gardiner gave Mr. McKenzie one "exceeds expectations" rating and "fully competent" in all other categories. (Wellman Aff. Ex. B, ECF No. 22-1). In January 2022, Mr. Fannin rated Mr. McKenzie "fully competent" in every category. (McKenzie Dep. Ex. 12, ECF No. 19-1). In November 2023, Mr. Jenkins gave Mr. McKenzie three "exceeds expectations" ratings and "fully competent" in all other categories. (McKenzie Dep. Ex. 14, ECF No. 19-1).

### B. Procedural History

Mr. McKenzie filed dual charges with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission on December 2, 2022. (McKenzie Dep. Ex. 10, ECF No. 19-1). The EEOC issued a right to sue letter on September 15, 2023. (Compl. Ex. A, ECF No. 1-1). Mr. McKenzie then initiated this lawsuit against the City of Columbus on September 19, 2023. (*See* Compl., ECF No. 1).

Mr. McKenzie brings claims for disparate treatment based on race and retaliation under Title VII and Ohio Revised Code 4112. (*Id*. ¶¶ 27–50). Mr. McKenzie separated his racial discrimination claims into Count I, "Race Discrimination – Failure to Promote," and Count II, "Race Discrimination – Disparate Treatment." (*Id*. ¶¶ 27–44). Count III, "Retaliation," alleges that the City retaliated against Mr. McKenzie through disciplines, denied merit pay increase, and denied promotion. (*Id*. ¶¶ 45–50).

The City answered the complaint, denying the allegations. (ECF No. 4). The City subsequently moved for summary judgment. (Mot., ECF No. 22). Mr. McKenzie responded (ECF No. 25) and the City replied (ECF No. 26).

### II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

6

56(a); *Maben v. Thelen*, 887 F.3d 252, 258 (6th Cir. 2018). The court's function at the summary judgment stage is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court thus asks "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). Ultimately, "summary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. Said differently, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," but evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249-50.

The party seeking summary judgment carries the initial burden of presenting the court with law and argument in support of its motion, as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, then the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Anderson,* 477 U.S. at 250.

Importantly, at the summary judgment stage, the court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Accordingly, at this stage in the litigation, the court must accept the plaintiff's version of events without weighing the evidence or assessing the credibility of prospective witnesses. *Cordell v. McKinney*, 759 F.3d 573, 578 (6th

7

Cir. 2014). But, "[t]he mere existence of a scintilla of evidence to support [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).

### III. LAW & ANALYSIS

Title VII prohibits an employer from "discriminat[ing] against any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits an employer from retaliating against an employee because of that individual's exercise of protected conduct. 42 U.S.C. § 2000e-3(a).

When a plaintiff cannot show a Title VII discrimination or retaliation claim directly, the *McDonnell Douglas* burden shifting test applies. *See Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 784 n.6 (6th Cir. 2016); *Abbott v. Crown Motor Co.*, 348 F.3d 537, 541 (6th Cir. 2003). The plaintiff has "the initial burden under the statute of establishing a *prima facie* case of discrimination [or retaliation]." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A prima facie showing "creates a presumption that the employer unlawfully discriminated [or retaliated] against the employee." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The defendant then bears the burden "to 'articulate some legitimate, nondiscriminatory reason' for its actions." *Canitia v. Yellow Freight System, Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990) (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817). If the defendant does so, the burden shifts back to the plaintiff to show "that the proffered reason was not the true reason for the employment decision." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir. 1996).

The Ohio Supreme Court has held that actions under Ohio Revised Code § 4112 follow the Title VII framework.[1] *Abbott*, 348 F.3d at 541 (citing *Plumbers & Steamfitters Joint Apprenticeship Comm. V. Ohio Civil Rights Comm'n.*, 421 N.E.2d 128, 131 (Ohio 1981)). This holding applies to discrimination claims and retaliation claims. *Id*.

### A. Disparate Treatment

To make a prima facie case for discrimination, the plaintiff must show that he was: (1) a member of a protected class; (2) qualified for his position; (3) subject to an adverse employment action; and (4) treated differently than similarly situated employees outside the protected class. *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 303 (6th Cir. 2016). "A plaintiff can demonstrate pretext by showing that the [defendant's] proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).

The City does not challenge—and therefore concedes—that Mr. McKenzie can establish a prima facie case as to the promotion and merit raise claims. (*See* Mem., ECF No. 22, 7–12 (failing to argue that Mr. McKenzie has not established a prima facie case and instead arguing that he cannot demonstrate pretext)). For those claims, the City solely argues that it has put forth legitimate, non-discriminatory reasons for its actions and that Mr. McKenzie cannot show that those reasons are pretextual. (Mem., ECF No. 22, 8). As to any discrimination claim based on disciplines, the City argues that Mr. McKenzie did not raise that claim in his complaint, but first raised it in opposition to the City's Motion. (Reply, ECF No. 26, 3–4). The City also argues that Mr. McKenzie has not identified a similarly situated employee who was not disciplined.

---

[1] This Court notes that Ohio law allows individual liability, while Title VII does not. *Finley v. City of Trotwood*, 503 Fed. App'x 449, 452 n.2 (6th Cir. 2012). The City of Columbus is the only defendant here.

9

*1. Failure to Promote*

The City argues that Mr. Maynard considered all RCARs for the backup supervisor position and decided to promote Ramey based on skills and experience. The City contends that Mr. Maynard offered every RCAR the chance to be considered for the backup supervisor position. When no one did, Mr. Maynard selected Mr. Ramey for the position. The City asserts that Mr. Maynard made that decision based on "the skill sets and work productivity of the RCAR employees." (Mem., ECF No. 22, 8).

First, viewing the record in favor of Mr. McKenzie, this Court cannot assume that Mr. Maynard accurately evaluated Mr. McKenzie's and Mr. Ramey's qualifications. On at least some objective criteria, Mr. McKenzie appears more qualified that Mr. Ramey. Mr. Ramey had been an RCAR for one month, whereas Mr. McKenzie had worked in the position for seven years and had positive evaluations. With negligible experience as an RCAR, Mr. Ramey likely was less familiar than Mr. McKenzie with specific challenges faced by RCARs. These facts could cause a reasonable juror to doubt the City's proffered reason for the promotion decision. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 395 (6th Cir. 2008) (abrogated on other grounds); *see also Levine v. DeJoy*, 64 F.4th 789, 800 (6th Cir. 2023)

Further, Mr. McKenzie testified that Mr. Maynard directly asked the white RCARs to apply for the position, but did not ask Mr. McKenzie or Mr. Fleming. Mr. McKenzie's testimony that Mr. Maynard asked the white RCARs and that Mr. Maynard did not ask Mr. Fleming may be hearsay evidence without an exception. *See Carter v. Univ. of Toledo*, 349 F.3d 269, 274 (6th Cir. 2003). The same may be true for the statements in Ms. Wellman's notes that Mr. Maynard directly asked Mr. McDole and Mr. Ryan to be backup supervisor. (Maynard Dep. Ex. B, PageID ## 187, 191). That said, Mr. McKenzie's testimony supports that Mr. Maynard never asked Mr. McKenzie. (McKenzie Dep., ECF No. 19-1 at 73:5–17). And Mr. Maynard testified that he asked

10

all RCARs to let him know if they were interested in the opening. (Maynard Dep., ECF No. 20-1 at 50:5–12). So, at minimum, admissible evidence supports that Mr. Maynard said he asked all RCARs, and that Mr. Maynard actually did not ask Mr. McKenzie. Viewed in the light most favorable to Mr. McKenzie, this suggests that Mr. Maynard lied about asking all RCARs to cover up that he did not consider Mr. McKenzie based on his race. *See Dews*, 231 F.3d at 1022 (noting that "in many cases where discriminatory animus truly is at issue, an employer may simply avoid advertising a particular opening so as to avoid controversy among affected employees").

Accordingly, a reasonable juror could conclude that the City's proffered explanation did not actually motivate the decision, and that the City discriminated against Mr. McKenzie. *Id.* at 1023. For these reasons, this Court **DENIES** summary judgment with respect to Mr. McKenzie's disparate treatment claim for failure to promote.

## 2. Merit Raise

The City asserts that Mr. McKenzie did not receive a merit raise "because he did not receive sufficient 'exceeds expectations' ratings." (Mem., ECF No. 22, 12). The City argues that Mr. McKenzie cannot show that this explanation is pretextual.

The City's proffered reason is plainly insufficient. Under the collective bargaining agreement, the review is the mechanism for determining Mr. McKenzie's eligibility for a raise. To receive a raise, Mr. McKenzie needed four "exceeds expectations" ratings. Mr. Maynard conducted the review and chose not to give Mr. McKenzie four such ratings. (Maynard Dep. Ex. A, ECF No. 20-1). Viewing the record in favor of Mr. McKenzie, this Court cannot assume that Mr. Maynard's evaluation accurately reflected Mr. McKenzie's work. Mr. Maynard's evaluation is "inherently subjective" and "thus easily susceptible to manipulation in order to mask [his] true reasons[.]" *See White*, 533 F.3d at 394. "Indeed, since the very issue in dispute is whether the reasons given by [Mr. Maynard] for [his] decision should be believed, it would be highly

11

inappropriate to assume … that [Mr. Maynard's] own subjective perceptions of [Mr. McKenzie] were accurate." *Id*. That Mr. Maynard gave insufficient "exceeds expectations" ratings explains *how* Mr. McKenzie did not receive a raise, but not *why*.

The City counters that Mr. McKenzie had the same ratings the prior year and that he testified that the supervisor who gave those ratings was "fair" and the ratings were "decent." (Reply, ECF No. 26, 6 (citing McKenzie Dep., ECF No. 19-1, 105:5–106:15)). According to the City, this implies that the ratings Mr. Maynard gave accurately reflected Mr. McKenzie's performance. But the City overlooks portions of Mr. McKenzie's testimony. When asked if the prior evaluation was "fair," Mr. McKenzie did testify, "It's decent" but then added, "I mean, I felt like I exceeded expectations[.]" (McKenzie Dep., ECF No. 19-1, 105:23–24). Further, Mr. McKenzie attributed the prior year ratings to "a dark cloud over [him]" due to his EEO interview about Mr. Brosie's racially discriminatory conduct. (*Id*. at 106:8–15). A reasonable juror could find that the prior ratings were tainted management's reaction to protected activity and do not serve as an appropriate baseline.

In its Reply, the City argues that Mr. McKenzie has not presented evidence of evaluations or merit increases for similarly situated employees. (Reply, ECF No. 26, 6). This goes to the prima facie case. The City did not challenge the prima facie case in its opening brief and therefore waived this argument. *Thornhill v. WillScot Mobile Mini Holdings Corp.*, 764 F. Supp. 3d 670, 690 n. 12 (M.D. Tenn. 2025) (citing *Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517 (6th Cir. 2010).

There is a genuine dispute of material fact whether the City's proffered legitimate, non-discriminatory reason explains why the City denied Mr. McKenzie a merit raise. Therefore, this Court **DENIES** summary judgment with respect to Mr. Mr. McKenzie's disparate treatment claim based on the denied merit raise.

12

*3. Disciplines*

As a threshold matter, the City argues that Mr. McKenzie did not raise the September 2022 disciplines as a disparate treatment claim until his response to the Motion for Summary Judgment. (Reply, ECF No. 26, 3–4). According to the City, the only two claims for disparate treatment in the complaint are "regarding a failure to promote and a failure to receive a merit pay increase." (*Id.* at 3 (citing Compl., ECF No. 1, ¶¶ 27–44)).

Count I is labeled "Race Discrimination - Failure to Promote" and addresses the backup supervisor position. (Compl., ECF No. 1, ¶¶ 27–36). But though Count II includes allegations about denied merit pay increases where Count I includes allegations about the backup supervisor position, Count II is labeled "Race Discrimination – Disparate Treatment." (*Id.* ¶ 36–37). In addition to the allegations about the merit increases, Count II states that "Plaintiff was treated differently than other similarly situated Caucasian employees." (*Id.* ¶ 40). And Count II incorporates the allegations set forth above (*id.* ¶ 37), including that:

> After Maynard became Plaintiff's supervisor, Maynard treated Plaintiff differently. For example . . . Maynard issued discipline to Plaintiff for incorrect GPS instructions without disciplining other Caucasian employees for the same mistakes.

(*Id.* ¶ 18). Looking to the complaint as a whole, this Court finds that Count II includes Mr. McKenzie's allegations regarding the disciplines.

The City suggests that the disciplines—an oral and written reprimand—are not actionable adverse actions. Even written reprimands are not always adverse actions for purposes of a disparate treatment claim.[2] *Creggett v. Jefferson Cnty. Bd. of Educ.*, 491 F. App'x 561, 566 (6th

---

[2] The disciplines are adverse actions for the retaliation claim. Particularly as Mr. Maynard gave two disciplines in quick succession and as Mr. McKenzie's collective bargaining agreement has a progressive discipline system, the disciplines "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

13

Cir. 2012) ("A written reprimand, without evidence that it led to a materially adverse consequence such as lowered pay, demotion, suspension, or the like, is not a materially adverse employment action.") The Supreme Court has clarified that an adverse action requires "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 355 (2024). Here, Mr. McKenzie's collective bargaining agreement had a progressive discipline system. Under that system, the reprimands changed the terms of Mr. McKenzie's employment because any future violation would have harsher consequences, including, as materialized here, working suspension. Therefore, the disciplines are actionable adverse actions.

The City next argues that Mr. McKenzie has not identified a similarly situated employee who engaged in the same conduct without receiving a discipline. Mr. McKenzie identifies a white RCAR, Mr. Ryan, who left his phone and Rubicon system at the warehouse when he started his route and had to return for it. The City does not argue that Mr. McKenzie has not put forth evidence that Mr. Ryan engaged in the same conduct or that Mr. Maynard did not discipline Mr. Ryan for that conduct. (*See* Reply, ECF No. 26, 4–5). Instead, the City contends that Mr. McKenzie has presented no evidence that Mr. Maynard knew of Mr. Ryan's conduct. (*Id.*).

Mr. Maynard's knowledge could be inferred. Mr. Ryan left his route to return to the warehouse to retrieve his forgotten phone. Mr. Maynard worked at that facility. Further, Mr. Maynard was responsible for ensuring that Mr. Ryan followed and completed his route. At that time, Mr. Maynard only supervised four RCARs as well as the backup supervisor. Viewed in the light favorable to Mr. McKenzie, Mr. Maynard knew that Mr. McKenzie and Mr. Ryan engaged in similar conduct, but he chose to discipline Mr. McKenzie and not Mr. Ryan.

Finally, the City argues that Mr. McKenzie's claim fails because he admits to the conduct at issue. True, Mr. McKenzie admits that he did not make the refueling stop in his Rubicon route on September 8, 2022 and that he did not use Rubicon for his first stop on September 13, 2022.

14

But Mr. McKenzie's claim is that Mr. Maynard singled him out for discipline for conduct for which Mr. Maynard normally did not discipline and did so based on a discriminatory motive.

Therefore, this Court **DENIES** summary judgment with respect to Mr. McKenzie's disparate treatment claim based on the disciplines.

### B. Retaliation

To establish a prima facie retaliation case, a plaintiff must show: (1) that he engaged in protected activity; (2) known to the defendant; (3) that the defendant took an adverse employment action against him; (4) that had a causal connection to the protected activity. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

The parties agree that Mr. McKenzie engaged in protected activity when he and Mr. Fleming met with Ms. Blevins on August 4, 2022. After that meeting, Mr. Maynard initiated disciplines against McKenzie on September 8, 2022 and September 13, 2022 and gave Mr. McKenzie lower performance ratings leading to a denied merit raise in December 2022. Mr. McKenzie asserts that Mr. Maynard took these actions in retaliation for the EEO complaint.

As to the disciplines, the City only disputes the causal connection element. The City argues that Mr. McKenzie cannot establish a causal link between the protected activity and the disciplines because there is no evidence that Mr. Maynard knew of the protected activity until Ms. Blevins and Ms. Wellman interviewed him on September 14, 2022. If Mr. Maynard did not know about the EEO complaint before that meeting, he could not have acted with a retaliatory motive in the days prior.

The evidence supports a reasonable inference that Mr. Maynard learned of Mr. McKenzie's EEO complaint before initiating the disciplines. Mr. Maynard supervised a small team of RCARs. Mr. Maynard's responsibilities including monitoring each RCAR's daily route and assignments and required ongoing communications. On Monday, August 29, 2022, Ms. Blevins and Ms.

15

Wellman interviewed three of Mr. Maynard's supervisees about Mr. McKenzie's EEO complaint against Mr. Maynard. These interviews were not held in secret. Ms. Blevins and Ms. Wellman conducted the interviews during the workday and in person. The RCARs interviewed would have needed to adjust their routes to make time for the interview. Additionally, Mr. Maynard had a prior relationship with at least one employee who interviewed that day, Mr. Ramey, the newly promoted backup supervisor. This evidence supports an inference that Mr. Maynard learned of Mr. McKenzie's complaint prior to initiating the disciplines. *Hicks v. SSP Am., Inc.*, 490 F. App'x 781, 785 (6th Cir. 2012) (citing *Mulhall v. Ashcroft,* 287 F.3d 543, 553 (6th Cir. 2002)) (holding that evidence of an ongoing supervisor-supervisee relationship between the decision-maker and another employee who knew of the protected activity supports an inference that the decision-maker also knew of the protected activity).

Viewed in the light most favorable to Mr. McKenzie, Mr. Maynard learned of the complaint when Ms. Blevins and Ms. Wellman interviewed his other supervisees on August 29, 2022. Days later, Mr. Maynard initiated the first discipline. The following week, Mr. Maynard initiated the second. Standing alone, this temporal proximity is sufficient to establish a causal connection. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation"); *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 776 (6th Cir. 2018) (even a span of more than two months is "sufficient temporal proximity to establish a causal connection").

There is more evidence here. RCARs were not required to use the Rubicon system when Rubicon navigated onto the highway, as it often did for the first stop. The fuel policy only required RCARs to refill if their tank fell below one thousand pounds per square inch. Further, Mr.

McKenzie testified that he (and other RCARs) regularly did not use Rubicon for his first stop. But Mr. Maynard had not previously initiated disciplines against Mr. McKenzie. And, as discussed above, Mr. McKenzie has put forth evidence that Mr. Ryan engaged in similar conduct without receiving any discipline. Viewed in the light favorable to Mr. McKenzie, this evidence suggests that Mr. Maynard began looking for opportunities to discipline Mr. McKenzie after learning of the EEO complaint. Mr. Maynard seized that opportunity when Mr. McKenzie did not make the refueling stop in his Rubicon route on September 8, 2022 and when he did not use Rubicon for his first stop on September 13, 2022. A reasonable juror could conclude that Mr. Maynard would not have disciplined Mr. McKenzie for this conduct but for Mr. McKenzie's protected activity. *George v. Youngstown State Univ.*, 966 F.3d 446, 460 (6th Cir. 2020) (if temporal proximity alone is not close enough to be sufficient standing alone, temporal proximity can be coupled with other evidence to establish a causal connection).

As discussed above, the City has not put forth a sufficient legitimate reason for the denied merit raise resulting from the December 2022 performance review. Further, the December 2022 review was Mr. McKenzie's first review following the EEO complaint. A reasonable juror could conclude that, after learning of the EEO complaint, Mr. Maynard began looking for reasons to discipline Mr. McKenzie and then gave Mr. McKenzie lower evaluations at the first opportunity to do so.

The City argues that Mr. McKenzie has abandoned his retaliation claim based on the denied merit raise. Mr. McKenzie does not respond in the "Retaliation" section of his brief to the City's argument that he cannot show that retaliation motivated the merit raise decision. (*See* Mem., ECF No. 22, 14; Resp., ECF No. 25, 12–14). But Mr. McKenzie does address this argument in the "Discrimination" section where he argues the City's proffered reason is insufficient and pretextual. (Resp., ECF No. 25, 12 ("Curiously, Maynard performed McKenzie's performance evaluation

17

after he was informed McKenzie filed a report of discrimination against him")). And the City's own "Retaliation" section argument simply incorporates by reference the argument in its brief's "Discrimination" section. (Mem., ECF No. 22, 14). Further, at oral argument, Mr. McKenzie expressly did not concede his retaliation claim based on the merit raises. Mr. McKenzie has not abandoned this claim.

As the City points out, Mr. McKenzie's EEO complaint included that Mr. Maynard overlooked him for backup supervisor. At oral argument, Mr. McKenzie did concede that Mr. Maynard cannot have retaliated against him for filing the EEO complaint by denying the promotion that he had already denied.

Accordingly, this Court **GRANTS** summary judgment with respect to the retaliation claim based on the denied promotion to backup supervisor. This Court **DENIES** summary judgment with respect to retaliation claims based on the September 2022 disciplines and the denied merit raise.

### C. Statute of Limitations

The parties agree that the statute of limitations for Mr. McKenzie's Ohio claims bars claims before December 2, 2020. (Mem., Doc. 22, 6–7; Resp., Doc. 25, 8). The City also asserts that the statute of limitations bars any federal claims before February 5, 2022. (Mem., ECF No. 22, 6). Mr. Brosie resigned as supervisor on September 4, 2020. (Wellman Aff., ECF No. 22-1, ¶ 3). Mr. McKenzie states that he does not bring claims based on Mr. Brosie's actions, but provides those allegations as relevant background. (Resp., ECF No. 25, 8). Summary judgment is **GRANTED** with respect to any claims that arose prior to December 2, 2020.

### IV. CONCLUSION

For the reasons set forth above, this Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Summary Judgment (ECF No. 22). Defendant's Motion is **GRANTED**

with respect to any claims that arose prior to December 2, 2020, and with respect to the retaliation claim based on the denied promotion.  Defendant's Motion is **DENIED** with respect to all other claims.

      **IT IS SO ORDERED.**

                                                          **ALGENON L. MARBLEY**
                                                          **UNITED STATES DISTRICT JUDGE**

**DATED: September 2, 2025**